**Felix A. LANDRAU ROMERO, et al., Plaintiffs,**

v.

**CARIBBEAN RESTAURANTS, INC. d/b/a Burger King Restaurants, Defendant.**

**No. Civ. 97–1491 (HL).**

United States District Court, D.Puerto Rico.

July 31, 1998.

Luis R. Mellado–Gonzalez, Capital Center Sur, San Juan, PR, for Felix A. Landrau–Romero, Gloria Gonzalez, plaintiffs.

Pedro A. Delgado–Hernandez, Maria de Lourdes Medina, O'Neill & Borges, Hato Rey, PR, for Caribbean Restaurants, Inc., defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion for summary judgment filed by Defendant Caribbean Res-

taurants, Inc. [hereinafter "CBI"]. CBI is a Puerto Rico corporation that operates 120 restaurants under the trade name "Burger King" in various locations throughout the entire island of Puerto Rico. Plaintiff Felix A. Landrau Romero [hereinafter "Landrau"] was an employee of CBI from December 18, 1995 until his resignation on April 29, 1996. He claims that he was sexually harassed and constructively discharged in violation of Title VII of the Civil Rights Act of 1964,[1] Puerto Rico Law 17,[2] Puerto Rico Law 100,[3] and Article 1802 of the Puerto Rico Civil Code.[4] Landrau's common law wife, Gloria González joins him as a plaintiff in this suit.

## FACTS

The Court reviews the record in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor. *See Vargas v. Cummings*, 149 F.3d 29 (1st Cir. 1998); *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993).[5] Landrau was hired by CBI on December 18, 1995 as a "Fast–Track" management trainee. In the Fast–Track program, individuals with no prior experience in the company receive three months of training and are then qualified to work as assistant managers. The Fast–Track program at CBI entails placing an employee at a working restaurant for seven weeks while they study basic operations like food handling, product knowledge and preparation, maintenance, hygiene; in short, Fast–Track employees learn the basic skills necessary to assist the manager of a fast food restaurant during this seven week course.[6] Employees are tested and certified as they

go. They then attend a two week training course at CBI's central offices in which they are tested on the previous seven weeks' knowledge and instructed in additional administrative and personnel areas. This two week course includes training on sexual harassment CBI's sexual harassment policies.[7] After the two week course at company headquarters, Fast Track employees are assigned to a restaurant where they work as assistant managers and are certified as such after two weeks of working in that capacity.[8]

On December 18, Landrau reported to company headquarters where he received literature about CBI's company policies, and signed a document stating that he had received a copy of the CBI's policy on sexual harassment.[9] The next day, Landrau reported to the Burger King Restaurant in Cupey ["Cupey I"] where he was to begin his seven weeks of initial training.[10] It was here that Landrau encountered the manager of Cupey I, Jaime Figueroa, his alleged harasser.

Landrau alleges and the Court accepts as true for purposes of this opinion that he was subjected to various indignities at the hands of Figueroa. He claims that Figueroa approached him several times, smiling and winking at him in what he perceived to be a flirtatious manner.[11] Plaintiff claims that on another occasion Figueroa made an explicitly sexual comment to him which Figueroa repeated to another employee shortly thereafter.[12] Landrau mentions still another occasion when a co-employee asked how much Figueroa charged to have sex with a man, and Figueroa replied that it depended on the

---

1.  42 U.S.C. § 2000e–16 *et seq.*

2.  29 L.P.R.A. §§ 155–155*l* (1988).

3.  29 L.P.R.A. §§ 146–151 (1995).

4.  P.R. Laws Ann. tit. 31, § 5141 (1991).

5.  The Court notes that Plaintiffs' "statement of contested facts" is a melange of legal conclusions, unsupported factual allegations, and a few supported facts which largely do not controvert those set forth by defendant. *See Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996); *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 930 (1st Cir.1983);

*Dominguez v. Eli Lilly And Co.*, 958 F.Supp. 721, 727–29 (D.P.R.1997); Local Rule 311.12.

6.  Docket No. 22, exhibit A, at 2–3.

7.  *Id.*

8.  *Id.*

9.  Docket No. 22, exhibit B, at 36–40.

10. *Id.*

11. Docket No. 24, exhibit C at 2.

12. Docket no. 22, exhibit B at 94–95.

man.[13] Landrau also claims that Figueroa would become agitated when female employees would jokingly flirt with a man that Landrau believed to be romantically involved with Figueroa and that Figueroa would grab his own genitals in an insulting gesture to the female employees.[14] Landrau admits that Figueroa never asked him out, never gave him any sexually explicit notes or materials, never asked him about his sex life, never told plaintiff that he wanted to have sex with him or that plaintiff was sexy.[15]

Landrau asserts that sometime during the seven weeks at Cupey I that Figueroa told him that the way to fire someone was to change their schedule. On another occasion, Landrau similarly heard from Benjamín Gutiérrez, the district manager, that the way to fire someone was to impose a schedule impossible to meet and force them to resign.[16] Additionally, Landrau heard from other employees that Figueroa was openly commenting that Landrau was a slow learner and did not know how to work as an assistant.[17]

Landrau finished his seven weeks at Cupey I and underwent two weeks of training at CBI headquarters.[18] Landrau does not recall receiving training in sexual harassment during his two weeks at CBI headquarters.[19] After two weeks at CBI, he was then assigned to another restaurant for his final two weeks of training. He successfully completed the training, and was certified as an assistant manager. Landrau was told by managerial staff at the new restaurant that he would be transferred back to Cupey I. Hearing of his purportedly imminent transfer back to Cupey I from his co-workers caused Landrau to resign from his employment with CBI on April 29, 1996, only four months after he began.[20] He submitted a letter of resignation, and never reported any sexual harassment to anyone because he was ashamed, and afraid that by doing so, he would not be able to recover money owed to him by CBI.[21]

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the non-moving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc*, 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* 477 U.S. at 252, 106 S.Ct. at 2512.

Title VII prohibits an employer from discriminating against any individual on the basis of their sex. *See* 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is a form of discrimination prohibited by Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 778–82 (1st Cir.1990). There are generally two recognized types of sexual harassment: *quid*

---

13. *Id.* at 82, 90.

14. *Id.* at 88, 109–10.

15. *Id.* at 102–6.

16. Docket No. 24, exhibit C at 5–6.

17. *Id.* at 4.

18. Landrau had to return to Cupey I for one day to be recertified on an aspect of his training.

19. Docket No. 24, exhibit C at 7.

20. *Id.*

21. *Id.*

*pro quo* harassment and harassment due to a hostile environment. *Chamberlin,* 915 F.2d at 782 citing *Henson v. City of Dundee,* 682 F.2d 897, 908 n. 18 (11th Cir.1982). Plaintiff's complaint is not clear as to which category of sexual harassment he is alleging; therefore, the Court shall analyze his claims under both theories.

### 1. Sexual Harassment—Quid Pro Quo

█ In *quid pro quo* harassment, an employer conditions the granting of a job benefit on an employee's response to sexual overtures, or punishes the employee for refusing to comply. *Chamberlin,* 915 F.2d at 783. In order to successfully bring a claim for quid pro quo harassment, plaintiffs must show: (1) the plaintiff-employee is a member of a protected group; (2) the sexual advances were unwelcome; (3) the harassment was sexually motivated; (4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment; and (5) respondeat superior liability has been established. *Id.; Cotto v. General Acc. Ins. Co. of Puerto Rico, Ltd.,* 975 F.Supp. 410, 413 (D.P.R.1997).

█ First, it is clear that plaintiff is a member of a protected group. All people are protected from sexual harassment on the basis of their gender under Title VII. *See, Oncale v. Sundowner Offshore Services, Inc.,* — U.S. ——, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998)("Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women")(citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 682, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983)).

Second, plaintiff has presented a bare margin of evidence that Figueroa made sexual advances toward him. He claims that Figueroa winked at him on a few occasions and made a lewd comment to plaintiff and another employee which plaintiff perceived as a sexual invitation. There is no evidence that Figueroa made any explicit or implicit requests or overtures to plaintiff for sexual favors. There is no evidence that he physically touched plaintiff in any way. Figueroa,

at the request of another employee, repeated the lewd comment in plaintiff's presence. Again, there was no explicit or implicit overture to plaintiff.

Thus, other than winking, there is no evidence in the record of Figueroa making sexual advances on the plaintiff. Winking, in the context of plaintiff's other allegations, at its worst amounts only to teasing. *Oncale,* — U.S. at ——, 118 S.Ct. at 1003("Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.") Thus, the Court finds that plaintiff has failed to satisfy the second element of demonstrating a *quid pro quo* claim.

Third, plaintiff must show that the harassment was sexually motivated, i.e. "But for the fact of [his] sex, the plaintiff would not have been the object of harassment." *Chamberlin,* 915 F.2d at 784 quoting *Jones v. Flagship Int'l,* 793 F.2d 714, 719 (5th Cir. 1986). Again, the Court has difficulty in finding for the plaintiff. The record is replete with Figueroa's boorish behavior in front of both male and female employees. As noted, he grabbed his genitals to insult female employees. Although Figueroa made a lewd comment to plaintiff and another male employee, there is ample evidence of his use of foul language for all employees to hear.[22] Thus, the Court can not find that any lewd comments or gestures were made to plaintiff because of his gender. Other than Figueroa's winks at plaintiff, the Court is hard-pressed to find that any of Figueroa's actions were made on the basis of gender.

Step four requires that the employee's reaction to the harassment affected a tangible aspect of his employment. *Id.* Here, there is no evidence that plaintiff suffered any loss of job benefits as a result of not responding to Figueroa's winks. Plaintiff claims that Figueroa made openly negative comments to other employees about his job performance. He further claims that Figueroa and the district manager told him how to fire some-

---

**22.** Docket No. 22, exhibit E at 28–29, 31.

one by changing their schedules. However, neither negative comments nor remarks about firing people amount to a tangible job detriment in this case. In fact, it is undisputed that after being under Figueroa's tutelage for seven weeks, plaintiff eventually completed the rest of his training program successfully and was promoted to the rank of assistant manager. He received a pay raise and was eligible for other benefits. Shortly after receiving his advancement, plaintiff resigned. Ultimately, there is not one scintilla of evidence demonstrating that plaintiff was adversely affected in his job because he ignored any advances by Figueroa.[23]

### 2. Sexual Harassment—Hostile Environment

■ In order to prevail on a claim for hostile environment type sexual harassment, the employee must show that discriminatory intimidation so permeates the workplace that it is sufficiently severe and pervasive to alter the conditions of a victim's employment and create an abusive environment. *Oncale*, — U.S. at —, 118 S.Ct. at 1001; *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Furthermore, the alleged conduct must create an objectively hostile environment—one which a reasonable person would find hostile or abusive, as well as be subjectively hostile or abusive to the victim. *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367.

■ In this case, plaintiff fails on all fronts. He fails to establish that any conduct towards him was on the basis of his sex, and he fails to show that the behavior created an actionable hostile environment. First, the actions of Figueroa as alleged by plaintiff did not create an actionable hostile work environment under Title VII. Figueroa, while he certainly used language and gestures tinged with sexual connotations in front of plaintiff and other employees, did not do so in a way that discriminated against plaintiff because of

his sex. The last prepositional phrase—because of his sex—is a crucial element to plaintiff's claim. *Oncale*, — U.S. at —, 118 S.Ct. at 1002; *Harris*, 510 U.S. at 25, 114 S.Ct. 367. The record is replete with examples of Figueroa's behavior in front of both sexes. While plaintiff complains of lewd comments Figueroa made to him and to others in his presence, the record clearly shows that Figueroa did not reserve his tasteless comportment for male employees, or that he treated male employees differently from female employees. In fact, it appears that Figueroa directed his most outlandish behavior, grabbing his genitals, as an insult to female employees.

While Figueroa's behavior and comments were often sexual in nature, and may have created an undignified or even unpleasant working environment, they were not discriminatory and thus not actionable under Title VII. *See, Oncale*, — U.S. at —, 118 S.Ct. at 1002 (affirming that Title VII is not a general civility code and that challenged conduct, even if offensive, must constitute discrimination because of sex); *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (stating that it must be discriminatory intimidation, ridicule, and insult which create a hostile environment); *Brown v. Hot Sexy and Safer Productions, Inc.*, 68 F.3d 525, 541 (1st Cir.1995)(Title IX case using Title VII cases and analysis concluding that discrimination must be on the basis of gender to fall within statute's purview).

Again, the only behavior presented by plaintiff that might constitute discrimination is the provocative winks and smiles that Figueroa directed at plaintiff on four or five occasions. The Court holds that this behavior alone, and in the aggregate with plaintiff's other allegations, is not severe or pervasive enough to create an objectively hostile environment sufficient to alter the terms and conditions of plaintiff's employment. There is no formula to be used to reach this conclu-

---

**23.** Plaintiff contends that he resigned rather than face Figueroa again. Even this contention does not indicate *quid pro quo* harassment. There is no evidence that Figueroa would have taken any adverse action regarding plaintiff's employment should he have been transferred back to Cupey I, and there is certainly no evidence that any such

adverse action would have been because plaintiff ignored his winks. *See, J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, (1st Cir.1996)("neither conclusory allegations, improbable inferences, and unsupported speculation . . . is sufficient to block summary judgment."(citations omitted)).

sion other than an examination of the totality of circumstances, including the context of the behavior, as dictated by *Harris,* 510 U.S. at 23, 114 S.Ct. 367. However, the First Circuit has established some guideline factors that may be included in determining whether a work environment is actionable sexual under Title VII. These include; the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's performance. *Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931, 945 (1st cir.1995). Applying these factors to the case at bar, it is quickly determined that plaintiff does not present any evidence to suggest an actionable hostile environment claim. The winks and smiles occurred at most five times over a seven week period. The crude language, gestures, and winks alleged are not severe in nature. At no time was plaintiff alleged to have been physically threatened or humiliated, and while possibly unpleasant, the behavior did not interfere with plaintiff's work performance since he passed the training program and was quickly promoted.

A brief survey of similar cases quickly confirms the Court's analysis by showing that Figueroa's behavior as alleged does not rise to the level of severity or pervasiveness generally considered actionable by other courts. *See, Morgan v. Massachusetts General Hospital,* 901 F.2d 186, 192–93 (1st Cir.1990)(conduct not sufficiently severe or pervasive to implicate Title VII liability where male co-worker stood behind plaintiff to cause physical contact, surreptitiously looked at plaintiff's privates in the restroom, 'hung around him a lot,' and engaged in unwanted touching, all over a two week period); *Hopkins v. Baltimore Gas and Elec. Co.,* 77 F.3d 745, 753–54 (4th Cir.1996) *cert. denied,* —— U.S. ——, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996)(male supervisor's behavior not actionable when it involved bumping into male employee, kissing him at his wedding, staring at him in the bathroom, commenting on his appearance, and making sexual remarks to him where the acts occurred intermittently and did not entail an explicit sexual proposition); *Mullenix v. Forsyth Dental Infirmary for Children,* 965 F.Supp. 120, 151–

156 (D.Mass.1996)(Female employee's being laughingly told to wear a short skirt to a meeting, asked why she should get a paycheck when she had a husband, and called hysterical do not present genuine issues of material fact of an objectively hostile work environment).

■ Even assuming *arguendo* that plaintiff could state a claim for hostile environment sexual harassment, there is yet an insurmountable obstacle in his path. The Supreme Court recently issued two companion cases on hostile environment sexual harassment: *Faragher v. City of Boca Raton,* —— U.S. —— , 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries, Inc. v. Ellerth,* —— U.S. ——, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Those cases hold that an employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate or successively higher authority over an employee except that when the alleged victim has suffered no tangible job consequences, an employer may raise the affirmative defense that it exercised reasonable care to prevent and correct promptly any harassing behavior, and the alleged victim failed unreasonably to take advantage of the preventive or corrective opportunities.

In the case at bar, it is undisputed that plaintiff suffered no tangible job consequences. He was promoted to the rank of assistant manager after advancing successfully through his training program, and resigned shortly thereafter. It is also undisputed that defendant had a policy against sexual harassment and a mechanism in place to deal with any claims of sexual harassment by employees. The ordinary course of conduct was to give employees literature on the procedures and to devote a portion of their training to explaining the policy. The mechanism established by defendant called for employees to present a complaint to either the human resources director or the administrative director either by telephone or by mail. Either of these two executives is then empowered to conduct an investigation into

the alleged conduct and to take appropriate disciplinary measures.[24]

Plaintiff claims in his affidavit that he does not recall receiving any training from CBI on the subject of sexual harassment. However, it is not contested that plaintiff received a copy of the sexual harassment policy and signed a receipt to that effect. It is also not contested that plaintiff successfully completed CBI's training program which ordinarily entails a lecture on the sexual harassment policy. In light of the above, especially the fact that plaintiff received a copy of the company's policy and procedures, plaintiff's lack of memory concerning training does not create a genuine issue of material fact regarding the fact that CBI had promulgated an antiharassment policy and complaint procedure.

The Supreme Court in *Faragher* implied that issuance of an explicit antiharassment policy with a compliant procedure would satisfy the first prong of the affirmative defense that the employer exercised reasonable care to prevent and correct sexually harassing behavior. *Faragher*, —— U.S. at ——, 118 S.Ct. at 2292. In fact, the Court specified that such a policy is not necessary as a matter of law and that even a less obvious policy may sometimes suffice. *Id.* There being no genuine issue of material fact regarding the fact that CBI had such a policy in place, defendant has satisfied the first prong of the affirmative defense as a matter of law.

The second prong of the defense is that the employee must have unreasonably failed to avail himself of any corrective or preventive opportunities provided by the employer. *Id.; Burlington*, —— U.S. at ——, 118 S.Ct. at 2270. Here, plaintiff never informed anyone of his alleged harassment. He never spoke to co-employees, supervisors, managers, or even his alleged harasser about the activity that prompted him to file this complaint. His resignation letter neither mentions nor alludes to any sexual harassment. He gives four reasons for not informing anyone of any harassment at the time of his resignation, but offers no explanation for why he did not come forward at an earlier date. He claims that he did not mention sexual harassment in his resignation letter for four reasons; that he did not want anything to do with Figueroa ever again, that he was too ashamed to tell anyone what was happening, that he did not trust the district manager, Benjamín Gutiérrez, and that he was afraid that the company would not give him his back pay if he told them of harassment.

These four reasons do not reasonableness equal, and plaintiff would have been unable to negate the second prong of the affirmative defense as a matter of law. First, the company's harassment procedure calls for a complaining employee to report directly to the human resources director or the administrative director. Plaintiff's stated reason of his aversion to Figueroa is not reasonable in light of this aspect of the procedure. Second, the fact that plaintiff was too ashamed to tell anyone cannot stand as a valid reason for avoiding the company's channels for dealing with sexual harassment. The company's stated policy of having complaints be handled confidentially alleviates the problem of shame. Third, plaintiff would have reported to executives other than Benjamín Gutiérrez if he had followed the company's procedures, thus his mistrust of Gutiérrez is not a reasonable excuse for failing to complain any more than his aversion to Figueroa. Finally, plaintiff has not produced even a scintilla of evidence nor even made allegations about any unwillingness on the part of CBI to pay him as he was entitled. Thus, it was unreasonable for him to avoid using CBI's complaint procedure because of fear that he might not be paid.

In summary, plaintiff fails to present an actionable hostile environment claim under Title VII because he has not shown that any behavior directed towards him by his supervisor was done so because of his sex or was severe and pervasive enough to sustain a claim. However, even assuming *arguendo* that plaintiff had raised a genuine issue of material fact in establishing his hostile environment claim, plaintiff would still be legally unable to prevail at trial in light of the affirmative defense recently outlined by the

24. Docket No. 22, exhibit A, attachment 1.

Supreme Court in *Faragher* and *Burlington* and successfully raised by defendant.

### 3. Claims under Puerto Rico Law

Plaintiff has alleged violations of Puerto Rico law arising out of the same nucleus of facts giving rise to his federal claims. Essentially, plaintiff claims a violation of the Puerto Rico Employment Discrimination Law and Anti–Sex Harassment Law, P.R. Laws Ann., tit. 29 §§ 146 *et seq.* and 155 *et seq.* ["Law 100" and "Law 17 respectively"], and appends a statutory tort claim under Civil Code section 1802 for damages for the result of the harm suffered, P.R. Laws Ann., tit. 31 § 5141.

Under Puerto Rico's Law 100, the employee bears the initial burden of presenting sufficient evidence that he was discharged without just cause, this entails showing (a) that he was actively or constructively discharged and (b) the discharge was without "just cause." P.R. Laws Ann., tit. 29 § 148 (1985); *Dominguez v. Eli Lilly And Co.,* 958 F.Supp. 721, 741 (D.P.R.1997); *Borrero–Rentero v. Western Auto Supply Company,* 2 F.Supp.2d 197 (D.P.R.1998); *Arthur Young & Company v. Virgilio Vega III,* 94 J.T.S. 75 at 11962, 11972 (1994). Only after plaintiff meets this initial requirement does the burden then shift to the employer to show that a discharge occurred for just cause. P.R. Laws Ann., tit. 29 § 148 (1985). *Dominguez,* 958 F.Supp. At 741.

■ Plaintiffs in this case have not met their initial burden of coming forward with evidence sufficient to show a constructive discharge under Law 100. The Puerto Rico Supreme Court summarized the test for constructive discharge in *Vélez Reilova v. Ramirez Palmer Bros., Inc.,* 94 P.R.R. 166, 169 (1967). *Dominguez,* 958 F.Supp. at 742. Essentially, the actions of an employer tending to compel an employee to abandon his position creates a discharge when the only reasonable alternative left to the employee is the abandonment of the position. *Vélez,* 94 P.R.R. at 169.

In this case, the record clearly demonstrates that plaintiff had a reasonable alternative to resigning from his job, namely, availing himself of the sexual harassment complaint mechanism offered by his employer. As established above, plaintiff has presented no genuine issue of material fact for not using the complaint procedure; therefore, his claim under Law 100 cannot be sustained because he has not met the burden of showing that he was discharged.

Puerto Rico's Anti–Sexual Harassment Law, Law 17, confirms this result. Law 17 establishes the obligations of an employer regarding sexual harassment in the workplace. An employer must comply with four requirements; they must express a strong policy against sexual harassment, make the prohibition of sexual harassment known, give publicity to job applicants regarding their rights to be free of harassment, and to establish an effective internal procedure for handling complaints. The record clearly establishes that CBI has complied with its obligations under this statute.

Furthermore, Law 17 calls for a totality of the circumstances analysis parallel to that of Title VII. P.R. Laws Ann., tit. § 155c (Supp. 1991). The Court having conducted this analysis above and concluded that plaintiff's allegations do not establish a claim as a matter of law, there is no need for repetition.

The general tort claim of plaintiff and his spouse under Puerto Rico Civil Code section 1802 is derivative of his claims under the other statutes. It calls for damages because the acts or omissions of CBI through fault or negligence caused harm to Landrau. Because none of plaintiff's causes of action under federal and local statutes were sustained, his claim for damages under this statute necessarily fails as well.

WHEREFORE, the Court hereby **grants** CBI's motion for summary judgment, **Dkt. No. 20.** Judgment shall be entered accordingly

**IT IS SO ORDERED.**