Filed 7/14/25  Mendoza v. Fresh Venture Foods CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| SICILIA MENDOZA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FRESH VENTURE FOODS, LLC, et al.,<br><br>    Defendants and Respondents. | 2d Civ. No. B333459<br>(Super. Ct. No. 18CV04448)<br>(Santa Barbara County) |

Sicilia Mendoza purports to appeal from the judgment entered after a seven-day court trial.  But there is no judgment.  There is only a statement of decision.  We construe the statement of decision as a final judgment and consider the appeal to have been taken from that judgment.  (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 656 ["'Reviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits'"].)

Appellant filed a single cause of action for constructive discharge in violation of public policy. The action was based on sexual harassment. It was against her employers – respondents Fresh Venture Foods, LLC (Fresh Venture) and Marisol Garcia Sandoval, dba Central City Labor (CCL).

After appellant completed her presentation of evidence, the trial court granted respondents' motion for judgment pursuant to Code of Civil Procedure section 631.8, subdivision (a).[1] The court concluded that appellant had not proved the following element of her cause of action: "[H]er working conditions were so intolerable that a reasonable person in her position would have no reasonable alternative except to resign." (See *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1248 ["the standard by which a constructive discharge is determined is an objective one—the question is 'whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit"].)

Appellant contends the trial court "applied the wrong legal standard to evaluate the . . . constructive discharge claim." It mistakenly believed that appellant had failed to carry her burden of proof because she "did not verbally complain of the intolerable

[1] Code of Civil Procedure section 631.8, subdivision (a) provides in part: "After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in [Code of Civil Procedure] Sections 632 and 634, or may decline to render any judgment until the close of all the evidence."

2

working conditions . . . in addition to submitting repeated written complaints." By "verbally" appellant means "orally." Appellant asserts: "[W]hether the complaints are made verbally or in writing is immaterial. . . . [T]he Trial Court creates new legal precedent by requiring an employee to take an additional step to complain verbally to an employer of any intolerable working conditions."

Appellant has misinterpreted the statement of decision. The trial court did not require a "verbal complaint" in addition to a written one. The court found that appellant was not entitled to relief because she had a reasonable alternative to resigning. The alternative was to follow her employer's internal complaint procedure. This finding is subject to review for substantial evidence. But appellant forfeited substantial evidence review. In any event, the finding is supported by substantial evidence. Accordingly, we affirm.

*Facts*

Appellant's Testimony

Appellant worked for CCL for approximately six weeks – from July 28, 2016, until September 7, 2016. She described CCL as "a company that hires . . . employees and places them in other companies for work." CCL placed appellant at Fresh Venture.[2]

When appellant started work, she was informed that J.B. "would be in charge of [her] training." J.B. "introduced himself [to appellant] as a supervisor." Thereafter, he continuously sexually harassed her.

---

[2] In her opening brief appellant states, "CCL directly employed [appellant] and paid her wages while she worked at Fresh Venture's facilities."

3

Appellant complained of J.B.'s behavior by placing a note in a locked "suggestion box" in Fresh Venture's lunch room. No one responded to the note. She also complained in a questionnaire that she completed for CCL, but she did not identify her harasser.

Appellant subsequently filled out a work evaluation form and gave it to CCL's agent. In the form she identified J.B. as the person who was harassing her. Appellant "wrote down that he was unbearable . . . and that [she] could not work at peace."

A short time later, appellant filled out another work evaluation form. She mentioned J.B.'s name and said she "was suffering from harassment and nobody was doing anything, and that it was unbearable for [her]." No one contacted her in response to her complaint.

On August 26, 2016, appellant filled out her final work evaluation form. She said "[t]hat the sexual harassment from [J.B.] was constant, that it was unbearable, and that [she] was very scared."

In the morning on September 7, 2016, appellant telephoned CCL's office and left a message saying "[t]hat I could not continue to work because that I didn't feel well; I didn't feel safe at the job." Later that same day, appellant went to CCL's office and told an employee named Lupita that she was leaving "because of [J.B.'s] sexual harassment" and because of the odor of "bleach" that pervaded the work area. Lupita said, "'Okay.'"

<u>Testimony of Respondents' Witnesses</u>

<u>Doreen Rusconi</u>

Doreen Rusconi worked for CCL. She was in charge of human resources and investigated any complaint of sexual harassment. She was the only person who had the key to the

4

suggestion box, which she checked "[a]t least once a week." She also reviewed work evaluation forms submitted by CCL's employees.

Rusconi testified that, when CCL was served with appellant's unlawful discharge complaint, she "pulled everything to see, and we had never received a complaint from [appellant]. So the first that we ever heard was when we got served."

Rusconi further testified that CCL's work evaluation form "was created and used just one time." The purpose of the form was to discover the reason why there was a high "turnover" of employees at Fresh Venture. Based on the forms, CCL determined that the cause of the high turnover was the "cold [temperature] and [odor of] chlorine" in the work area.

The work evaluation form was distributed to employees in September 2016. Appellant did not receive the form because she had already resigned. Appellant's personnel file did not contain a work evaluation form.

In August 2016 when appellant was working for CCL, the only document distributed to CCL's employees "was one on attendance." The document asked the employees to indicate "just what do they think good attendance is."

### Guadalupe Ruiz Castillo

Guadalupe Ruiz Castillo, also known as "Lupita," testified that she had worked in CCL's office. She provided sexual harassment training to new employees. She "explain[ed] [to them that] if they have any sexual harassment in general, they need to contact right away the supervisor or Doreen [Rusconi], which is in our office." Castillo "provided [the new employees with] the office phone number for that purpose."

5

Castillo trained appellant. At the time of the training, Castillo signed a document showing that she had informed appellant of the importance of "immediately" reporting sexual harassment.

According to a form completed by Castillo on the day appellant quit, appellant said over the telephone that she was leaving because of the odor of "cloro," i.e., "chlorine," in the work area. Castillo testified that "it was a really common issue for people to quit" because of the "chlorine."

Castillo did not recall appellant coming into the office and telling her that she was quitting because of J.B.'s sexual harassment. If appellant had made such a statement, Castillo "would have remembered" it and would have referred the matter to Rusconi.

*Trial Court's Tentative Oral Decision*

At the conclusion of oral argument on respondents' motion for judgment, the trial court rendered a tentative oral decision. It said: "I don't find [appellant] to not be credible. I think she really does believe the things that she testified to . . . . I think [J.B.] did those things to her, those things being pestering her at a minimum, and I think he touched her." "I don't know that there is a lot of lying going on. What there isn't though, there isn't destruction of evidence." "[W]hat was happening to [appellant] by [J.B.] was [] not appropriate at all. If she had sued for assault, I would have [f]ound for her. But the one thing that I, as the trier of fact find, . . . after . . . seeing . . . Doreen [Rusconi] and Lupita [Castillo] testify, there is no reason why [appellant] didn't go and talk to these ladies. They seem very approachable to me. They both spoke her language. . . . [Therefore,] I think she can't satisfy the [requirement] that she had no reasonable alternative

6

except to quit, and I don't have to say she is a liar because she really quit about chlorine or anything."

*Statement of Decision*

"In a nonjury trial the appellant preserves the record by requesting and obtaining from the trial court a statement of decision pursuant to California Code of Civil Procedure section 632. The statement of decision provides the trial court's reasoning on disputed issues and is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law." (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718.) In its statement of decision, the trial court said:

> The Court finds that [appellant's] working conditions were not so intolerable that a reasonable employee in her position would have no reasonable alternative but to resign. When [appellant] was hired by CCL she was told by Guadalupe "Lupita" Castillo, who worked in CCL's office, that it was important to report sexual harassment, and that reports of harassment could be made to Doreen Rusconi, CCL's office manager. A reasonable person in [appellant's] position would have had a reasonable alternative to resigning — reporting the harassment directly to either Ms. Castillo or Ms. Rusconi. The Court finds that [appellant] never made any reports of harassment directly to Ms. Castillo or Ms. Rusconi. Both Ms. Castillo and Ms. Rusconi speak Spanish, [appellant's] native language. Based on their demeanor and testimony during trial, the Court finds that both Ms. Castillo and Ms. Rusconi seem approachable and *credible*, and finds that if [appellant] had made reports of harassment directly to either one of them, they would have done something about it. Because a reasonable person in [appellant's] position would have had a reasonable alternative to resigning, [appellant's] wrongful constructive discharge claim must fail. [Italics added.]

7

*Standard of Review*

"Under Code of Civil Procedure section 631.8, 'a court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof. [Citation.] In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence.' [Citation.] [¶] When a trial court issues a judgment pursuant to Code of Civil Procedure section 631.8, the standards of appellate review are the same as if the court had rendered a judgment after a completed bench trial. [Citation.] The trial court's findings of fact are reviewed under the substantial evidence standard and its determinations of questions of law . . . are subject to independent review." (*Jones v. Quality Coast, Inc.* (2021) 69 Cal.App.5th 766, 772-773.)

*The Trial Court Did Not Apply the Wrong Legal Standard*

Appellant claims reversal is necessary because the trial court "applied the wrong legal standard to evaluate . . . a constructive discharge claim." The court allegedly believed that, to prove a constructive discharge, an employee must show that she complained both in writing and orally to her employer. Appellant argues: "[T]he delicate nature of the typical complaints submitted by employees of intolerable working conditions warrants preserving the ability of the employee to complain in writing without discussing a potentially traumatizing event out loud." "If this court accepts the Trial Court's additional duty on employees, an employer would effectively escape liability for complaints only documented in writing."

"'[I]t is a fundamental principle of appellate procedure that a trial court . . . judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of

8

the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.'" (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 473.) Appellant has failed to carry her burden. The trial court did not conclude that both written and oral complaints are necessary to prove a constructive discharge. The trial court concluded that a reasonable person in appellant's position would have had a reasonable alternative to resigning. The alternative was to directly complain to Castillo or Rusconi about the sexual harassment.

*Appellant Forfeited Substantial Evidence Review*

It is a factual question whether a reasonable person in appellant's position would have had a reasonable alternative to resigning. (See *Vasquez v. Franklin Management Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 827.) "'When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule. . . .'" (*Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514.)

Appellant forfeited substantial evidence review because in her opening brief she does not present meaningful analysis as to whether the trial court's findings are supported by substantial evidence. (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942-943.) Appellant argues that the substantial evidence rule is inapplicable because the trial court committed an error of law, which is subject to de novo review.

Appellant also forfeited substantial evidence review because in her opening brief she sets forth only the evidence in her favor. She ignores conflicting evidence in respondents' favor. She does not set forth the testimony of Rusconi and Castillo. She

9

says that her "statement of facts is based on [her] testimony at trial which the Trial Court found credible."

"Where the appellant challenges the sufficiency of the evidence, the reviewing court starts with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's affirmative burden to demonstrate otherwise. [Citations.]  The appellant's brief must set forth *all* of the material evidence bearing on the issue, not merely the evidence favorable to the appellant, and must show how the evidence does not sustain the challenged finding.  [Citations.]  If the appellant fails to set forth all of the material evidence, its claim of insufficiency of the evidence is forfeited." (*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.* (2007) 148 Cal.App.4th 937, 951.)

*Substantial Evidence Supports the Trial Court's Finding that Appellant Had a Reasonable Alternative to Resigning*

Even if appellant had not forfeited substantial evidence review, she would not have prevailed in this appeal. "'In general, in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.  [Citations.]" [Citation.]  In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].  [Citations.]"  [Citation.]  We may not reweigh the evidence and are bound by the trial court's credibility determinations.  [Citations.]  Moreover, findings of fact are

liberally construed to support the judgment.'" (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94.)

In arguing that the trial court "found credible" her trial testimony, appellant relies on the court's tentative oral decision at the conclusion of the trial. But appellant "cannot rely on the trial court's oral comments or announcement of intended decision to impeach its judgment." (*In re Marriage of Green* (1989) 213 Cal.App.3d 14, 20; see also *In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195, 1203 ["The written statement of decision controls over vague antecedent oral statements"]; *In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646 ["'[A] court is not bound by its statement of intended decision and may enter a wholly different judgment than that announced'"]; Cal. Rules of Court, rule 3.1590(b).)

However, we may look to the trial court's oral comments to clarify ambiguities in the statement of decision. (See *Rel v. Douglas County Civil Service Commission* (Wash. Ct. App. 1978) 20 Wash.App. 764, 766, fn. 3, [581 P.2d 1090] ["A trial court's oral statements may be used to clarify its written findings"].) The trial court orally indicated that it generally believed appellant's testimony as to J.B.'s acts of sexual harassment: "I don't find [appellant] to not be credible. I think she really does believe the things that she testified to . . . . I think [J.B.] did those things to her, those things being pestering her at a minimum, and I think he touched her." "If she had sued for assault, I would have [f]ound for her."

On the other hand, the trial court did not orally comment on the credibility of appellant's testimony that she had placed a note in the "suggestion box" complaining about J.B.'s sexual harassment or that on several occasions she had similarly

11

complained in work evaluation surveys. Appellant's testimony conflicted with Rusconi's testimony that CCL "had never received a complaint from [appellant]." Rusconi would have known if appellant had made a complaint. She was the only one who had a key to the suggestion box, and she checked it on a regular basis. She also reviewed the work evaluation forms submitted by employees. Rusconi testified that CCL had distributed the work evaluation forms only once – in September 2016 after appellant had quit. Appellant's personnel file did not contain a work evaluation form, and the trial court found that there was no "destruction of evidence."

Most important, appellant did not follow Castillo's instructions on how to report sexual harassment. Castillo trained appellant. She explained to trainees that "if they have any sexual harassment in general, they need to contact right away the supervisor or Doreen [Rusconi], which is in our office." Castillo "provided [the trainees] the office phone number for that purpose."

Appellant testified that, on the day she quit, she had told Castillo in a face-to-face conversation that she was quitting because of J.B.'s sexual harassment and the odor of "bleach" in the work area. Castillo could not remember the alleged conversation. She testified that, if appellant had complained to her about sexual harassment, she "would have remembered" it and would have referred the matter to Rusconi.

In its statement of decision, the trial court found Castillo and Rusconi to be credible witnesses. It made no finding as to appellant's credibility. Castillo's and Rusconi's credible testimony constitutes substantial evidence that appellant had a reasonable alternative to resigning – she should have directly

reported the sexual harassment to Castillo, Rusconi, or a supervisor pursuant to CCL's internal complaint procedure as explained to her by Castillo. (See *Landrau Romero v. Caribbean Restaurants, Inc.* (D. Puerto Rico 1998) 14 F.Supp.2d 185, 193 ["the record clearly demonstrates that plaintiff had a reasonable alternative to resigning from his job, namely, availing himself of the sexual harassment complaint mechanism offered by his employer"].) Castillo did not inform appellant that she should complain of sexual harassment by leaving a note in the suggestion box or by filling out a work evaluation form.

Whatever actions appellant may have taken, they were insufficient to alert Castillo or Rusconi to J.B.'s sexual harassment. In its statement of decision the court concluded that, if appellant had made Castillo or Rusconi aware of the sexual harassment by directly complaining to them, "they would have done something about it."

*Disposition*

The judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

13

James F. Rigali, Judge

Superior Court County of Santa Barbara

_____

Mallison & Martinez and Stan S. Mallison, Hector R. Martinez, Gonzalo Quezada, for Plaintiff and Appellant.

Mullen & Henzell and Rafael Gonzalez, Brian T. Daly; Ferguson Case Orr Paterson and Wendy C. Lascher, John A. Hribar, for Defendant and Respondent, Fresh Venture Foods.

Charley M. Stoll, for Defendants and Respondents, Marisol Garcia Sandoval dba Central City Labor.