# United States Court of Appeals
## For the First Circuit

---

No. 99-1818

SHERRI WHITE,

Plaintiff, Appellee,

v.

NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

---

Nancy J. Smith, Assistant Attorney General, with whom Philip T. McLaughlin, Attorney General, was on brief for appellant.

Michael J. Sheehan for appellee.

---

August 2, 2000

---

**BOWNES, Senior Circuit Judge.** The plaintiff-appellee, Sherri White, brought suit in the United States District Court for the District of New Hampshire against the defendant-appellant, the New Hampshire Department of Corrections ("DOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000h-6, and state law claims of wrongful discharge and intentional infliction of emotional distress.[1] Specifically, the plaintiff claimed that she was the victim of direct sexual harassment, of a hostile work environment, and of retaliation after she complained of the harassment.

The defendant moved for summary judgment on the sexual harassment claim. The court (Barbadoro, J.) denied the motion and the case proceeded to trial. The defendant moved in limine to limit evidence to issues in the administrative complaint and the federal complaint. The district court denied this motion. At the close of the plaintiff's case, the defendant moved for judgment as a matter of law. The district court took the motion under advisement. The court charged the jury, and the defendant objected to part of the charge. Defendant's objection was overruled and the court submitted the case to the jury. The jury returned a verdict for the plaintiff on all three claims with an award of damages in the amount of $45,000.00. The

---

[1]     Following an uncontested motion by the DOC, the district court dismissed the state law claims.

defendant renewed its motion for judgment as a matter of law verbally when the verdict was returned and thereafter in writing. The district court denied the defendant's motions, and this appeal followed.

On appeal, the defendant presents essentially three issues for review: (1) the plaintiff did not present sufficient evidence to support her claims of sexual harassment, hostile work environment, retaliation, and that the plaintiff had not proven that the defendant was liable for the acts of its employees;[2] (2) the district court erred in denying the defendant's motion in limine to exclude evidence; and (3) the district court improperly instructed the jury by misstating the law. For the reasons stated below, we affirm the district court in all respects.

## I. Facts

We briefly describe the facts here, but discuss them in greater detail where applicable and necessary for our discussion. The plaintiff was hired as a corrections officer ("CO") at the New Hampshire State Prison in Concord, New Hampshire in January 1993. She was qualified for the CO position and received positive evaluations in January 1994 and 1995. In early 1995, the plaintiff became a "direct supervision officer" ("DSO") for the inmates housed in the Hancock Unit ("H-Building"). In May of 1995, the plaintiff became the DSO of "B

---

[2] The plaintiff had sued only the DOC; she had not sued any of its employees individually.

-4-

Pod." Shortly thereafter, tensions developed between some of the other employees and the plaintiff. Some of these tensions were expressed in statements of a sexual nature directed at the plaintiff.

The plaintiff filed a complaint with the Discrimination Review Committee ("DRC") of the DOC on November 3, 1995 alleging sexual harassment. She also filed a copy of her complaint with the New Hampshire Human Rights Commission and the Equal Employment Opportunity Commission. The plaintiff's suit in the district court followed. The plaintiff alleged that, after she filed her administrative complaint, the DOC and its employees retaliated against her.

## II.  Sufficiency of the Evidence

The defendant argues before us that the district court erred when it denied the defendant's motion for summary judgment and motions for judgment as a matter of law. The DOC claims that the plaintiff did not provide sufficient evidence to prove the plaintiff's allegations.

Even assuming that the decision is reviewable on this appeal - a matter on which we take no view - there is no point in discussing the court's ruling on the summary judgment motion separately from our treatment of the denial of the defendant's motions for judgment as a matter of law. This is because we find that the evidence supports the judge's denial of the motions for judgment as a matter of law[3] and this

---

[3]     Federal Rule of Civil Procedure 50(a) governs motions for judgment as a matter of law:

amounts to an affirmance of the court's denial of the summary judgment motion.

We review the court's denial of defendant's motions for judgment as a matter of law de novo, but examine the evidence and inferences therefrom in the light most favorable to the plaintiff. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 210 F.3d 1, 7 (1st Cir. 2000). We may reverse only if a reasonable person could not have reached the conclusion of the jury. See Negron-Rivera v. Rivera-Claudio, 204 F.3d 287, 289-90 (1st Cir. 2000). In conducting our de novo review, we "may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Katz v. City Metal Co., 87 F.3d 26, 28 (1st Cir. 1996) (internal quotation marks omitted). The Supreme Court has stated that when "entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves

---

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

-6-

v. <u>Sanderson Plumbing Prods., Inc.</u>, _ U.S._, 120 S. Ct. 2097, 2110 (2000).

Once a jury renders a verdict, a "heavy burden" is placed on one who challenges it. <u>See</u> <u>United States</u> v. <u>Scharon</u>, 187 F.3d 17, 20 (1st Cir. 1999) (citations omitted). We stated that:

> One who challenges the sufficiency of the evidence bears a heavy burden: he must show that no rational jury could have found him guilty beyond a reasonable doubt. . . . We review the sufficiency of the evidence as a whole, in a light most favorable to the verdict, taking into consideration all reasonable inferences. . . . We resolve all credibility issues in favor of the verdict. . . . The evidence may be entirely circumstantial, and need not exclude every hypothesis of innocence; that is, the factfinder may decide among reasonable interpretations of the evidence.

<u>Id.</u>

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has stated that,

> this language is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to

work in a discriminatorily hostile or abusive environment.

Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) (some internal quotation marks omitted); see also Meritor Sav. Bank v. Vinson, 477 U.S. 57, 64 (1986); Los Angeles Dep't of Water and Power v. Manhart, 435 U.S. 702, 707 n.13 (1978).

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 78 (1998) (internal quotation marks omitted) (quoting Harris, 510 U.S. at 21). The Supreme Court directs us to "determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998) (internal quotation marks omitted); Harris, 510 U.S. at 23.

After careful review of the entire record, we hold that the facts adduced were sufficient for the jury verdict. We review the evidence on sexual harassment and a hostile work environment.

The plaintiff pointed to numerous comments made by other employees either to or about her which were "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Oncale, 523 U.S. at 78. The record reflects that Officer Colby (a male employee at the DOC who held the same position as the plaintiff) wanted to "keep an eye" on the plaintiff because he believed she was having a sexual affair with inmate York. Officer Colby told other employees: "I think she's in there blowing him and screwing him."[4] Officer Colby referred to the plaintiff as "Mrs. York." Inmates also referred to the plaintiff as "Mrs. York" because of the conversations they either heard or had with other prison employees.

The plaintiff also evinced that sexual conversations and jokes were common at the DOC. The male employees graphically spoke of their evenings at clubs and bars, read pornographic magazines at work, discussed the size of mens' penises and stared at women's breasts. Two male employees openly discussed their experiences with Prozac and how it affected their sex lives. A sergeant stated: "Oh, yeah, it will go up but it won't go down." A corporal explained that he had trouble getting an erection, and said to the plaintiff: "Sherri, I'd have to tip you upside down and dunk you like a tea bag." Plaintiff alleged that another employee said to her: "Gee, [the corporal] owed me a blow

---

[4] There is no evidence in the record to support this statement.

job for today, but seeing as though he's not here, you want to take care of that for me?" The plaintiff testified that the "disgusting comments," conversations and treatment of her were "continuing," "consistent" and occurred "everyday."

There was also evidence that the plaintiff was subjected to disparate treatment because she was a woman. For example, the plaintiff was told by her supervisor not to enter the supply room with an inmate because she was a woman and something could happen to her. The supply room was frequently used by employees as a place where prison guards could speak privately with inmates. The supervisor claimed that he feared that the plaintiff would be hurt because she is "a very pretty lady and we work in a hostile situation." The record reflects, however, that male guards had been hurt when they accompanied an inmate into a supply room, yet no male guard was given the same warning as the plaintiff and no male employee was prohibited from accompanying an inmate into the supply room.

Another example of disparate treatment was when an employee of DOC asked the inmates living on the plaintiff's pod how they felt about a woman running their pod. The male employees of the DOC often commented that they would not allow their wives to work in the prison, and told the plaintiff that if she were their wife, they would not want her working there. Nothing like that was said to any male employee.

It must also be noted that the DOC's own internal investigation found that "the work environment became intimidating and hostile for [the plaintiff] caused by inappropriate behavior by fellow workers and unprofessionalism of supervisors." The investigators further found that "the sexual remarks and innuendos that were made concerning [the plaintiff] and an inmate[] made this a sexual harassment case." The investigation concluded that "the fact that the chain of command broke down . . . the perceived favoritism of [the plaintiff] by fellow officers and the sexual remarks and innuendos made, created an intimidating and hostile work environment."

The plaintiff provided more than sufficient evidence to support a claim for hostile work environment. The evidence demonstrates that her workplace was "permeated with discriminatory intimidation, ridicule and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Oncale, 523 U.S. at 78; Harris, 510 U.S. at 21 (internal citations and quotation marks omitted).

We have stated that "[o]verriding a jury verdict is warranted only if the evidence 'is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ as to the outcome. '" Colasanto v. Life Ins. Co. of N. Am., 100 F.3d 203, 208 (1st Cir. 1996) (quoting Gibson v. City of Cranston, 37 F.3d 731, 735 (1st Cir. 1994)). No such evidence exists in this case and we affirm

the district court's denial of the defendant's motions for judgment as a matter of law on this ground.

We also hold that there is ample evidence in the record to support the plaintiff's claim of employer liability. Proving employer liability depends in the first instance upon whether the alleged harassment is caused by a co-employee of the victim or a supervisor. If the harassment is caused by a co-employee, the employer is liable if it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." Blanketship v. Parke Care Ctrs., Inc., 123 F.3d 868, 872 (6th Cir. 1997) (internal quotation marks omitted). If the offender is a supervisor, the employer is liable unless it proves the affirmative defense "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and . . . that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807. Review of the record reveals ample evidence for the jury to find the DOC liable for the conduct of its employees—both supervisors and co-employees. The plaintiff showed that the DOC was aware of the charged sexual harassment because the plaintiff complained to her supervisors and subsequently filed a complaint with the Discrimination Review Committee of the DOC. The plaintiff presented evidence from which it could be

-12-

found that the DOC did not handle the internal investigation properly or timely, and that the DOC allowed the conduct and comments to continue. Therefore, it was appropriate for the district court to deny the defendant's motion for judgment as a matter of law and allow the jury to determine that the DOC was liable for the conduct of plaintiff's co-employees.

The evidence in the record also supports the claim that the DOC was liable for the conduct of its supervisors because it shows that the DOC failed to prove that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Faragher, 524 U.S. at 778. In addition, the plaintiff "[took] advantage of any preventative or corrective opportunities provided by the employer," id., by filing her complaint with the DOC's internal investigatory committee. The record contains evidence from which the jury could have concluded that the DOC did not handle the internal investigation properly or timely, and that the DOC allowed the conduct and comments to continue.

The DOC further argues that the plaintiff failed to establish a prima facie case of retaliation. To establish a prima facie case of retaliation, a plaintiff must prove that "(1) [s]he engaged in protected conduct under Title VII; (2) [s]he suffered an adverse employment action; and (3) the adverse action is casually connected to the protected activity." Hernandez-Torres v. Intercontinental Trading,

-13-

Inc., 158 F.3d 43, 47 (1st Cir. 1998).  Review of the record indicates that the plaintiff did establish a prima facie case of retaliation.

The evidence adduced by the plaintiff was as follows:  The plaintiff engaged in protected activity by filing her internal and EEOC complaints.  See Hernandez-Torres, 158 F.3d at 47.  The plaintiff presented ample evidence for a jury to find that she suffered adverse employment actions subsequent to the filing of her complaint.  Adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees."  Id.  The plaintiff introduced evidence that other employees continued to harass her after she filed her complaint; that she was transferred out of her unit without her consent and not reassigned, but left to find another unit; and ultimately constructively discharged.  There was sufficient evidence for a jury to find that the plaintiff suffered adverse employment action because she filed a complaint.

## III. **Motion In Limine**

Prior to trial, the defendant moved in limine "to limit the evidence and testimony . . . to the issues raised by Plaintiff's internal sexual harassment complaint of November 3, 1995 and her claims of subsequent retaliation."  The defendant argued that "allowing testimony concerning issues of which Plaintiff did not complain would not be relevant."

-14-

The evidence in question was first brought up during the plaintiff's deposition. She claimed there were acts of sexual harassment which took place prior to the filing of the plaintiff's administrative complaint. The evidence included allegations that Corporal Brochu read pornography in the office; that Brochu, Hart and Bell used foul language and/or made sexual jokes or comments in her presence that she found offensive; and allegations about various other employees who were not specifically named in her administrative complaint.

The district court, ruling from the bench, denied the motion. The defendant argues that it was "an abuse of discretion to allow this evidence as [plaintiff] failed to exhaust administrative remedies regarding these allegations and there could be no relevance as the acts were not the subject of her complaint."

We review the district court's denial of the motion in limine for abuse of discretion. See JOM, Inc. v. Adell Plastics, Inc., 193 F.3d 47, 50 (1st Cir. 1999); see also United States v. Lozada-Rivera, 177 F.3d 98, 103 (1st Cir. 1999).

The district court determined that though the evidence in question was not specifically articulated in the administrative complaint, it was relevant to the claims set forth therein. The court denied the motion and instructed the defendant that it could later argue to the jury that "those matters should not be considered because

-15-

[the DOC was not] negligent in failing to stop them because [the DOC] didn't know about them because the plaintiff never brought them to [its] attention and the jury will have to find out whether there was negligence or not."

We hold that the evidence is relevant. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Civ. P. 401. The deposition evidence was directly related to the plaintiff's claim that she worked in a sexually hostile environment.

The defendant also contends that the district court abused its discretion when it denied the motion in limine to exclude evidence because the plaintiff "failed to exhaust administrative remedies regarding [those] allegations." The plaintiff argues that we need not consider this exhaustion argument because the defendant waived it when it failed to articulate it to the district court. Our reading of the record does not convince us that the defendant waived this contention; we therefore decide it on the merits.

We have held that the administrative charge "affords formal notice to the employer and prospective defendant of the charges that have been made against it," Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990) (internal citations and quotation marks omitted), and "[t]he scope of the civil complaint is accordingly limited to the

-16-

charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Id.; see also Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). We have also stated that

> [a]n administrative charge is not a blueprint for the litigation to follow. . . . [and] the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow. . . . Rather, the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

Powers, 915 F.2d at 38 (internal citations and quotation marks omitted).

Here, the plaintiff filed her administrative complaint with the New Hampshire Human Rights Commission and the EEOC, claiming that she was discriminated against on the basis of her gender, subjected to a hostile work environment and retaliated against after reporting the alleged sexual harassment. In her administrative complaint, the plaintiff gives ten examples of the alleged discrimination in a "partial list" (emphasis added), consisting of almost two pages. Though the administrative complaint does not spell out all of the specific comments made by various employees, it was sufficient to describe the essential nature of the charge and to lead to a reasonable investigation thereof. As such, the evidence that the defendant wished

-17-

to exclude fell within the scope of the administrative complaint and the plaintiff was entitled to bring it before the district court. See Powers, 915 F.2d at 38. The district court did not abuse its discretion when it denied the DOC's motion in limine and allowed the evidence to be introduced at trial.

## IV.  Jury Instruction

The DOC argues that "the jury instruction regarding retaliation was inadequate and is likely to have misled or confused the jury regarding the applicable law." It contends that the court erred when it "refused" to "instruct the jury that the plaintiff was required to prove that the [defendant's] given reasons [for discharging the plaintiff] were a pretext and that the real reason was retaliatory intent." The DOC claims that the jury instruction, as charged, violates the precepts of the burden-shifting scheme, articulated by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973), and constitutes reversible error.

The standard of review for preserved challenges to jury instructions is well-settled:

> The standard of review is ironclad: The trial court's refusal to give a particular instruction constitutes reversible error only if the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case.

United States v. DeStefano, 59 F.3d 1, 2 (1995) (internal quotation marks omitted).

The district court instructed the jury regarding the retaliation claim as follows:

> To prove a retaliation claim under Title VII the plaintiff must prove by a preponderance of the evidence that:
>
> (1) plaintiff filed a sexual harassment complaint with her employer,
>
> (2) after the plaintiff filed her sexual harassment complaint she was subjected to an adverse employment action by her employer, and
>
> (3) that the employer took the adverse employment action because she had filed a sexual harassment complaint.
>
> Adverse employment actions may include actions by the employer amounting to a constructive discharge, the preparation of an unwarranted negative employment evaluation, an unwarranted disadvantageous transfer, or toleration of harassment by employees.
>
> Plaintiff does not have to prove that her sexual harassment claim has merit in order to prove her retaliation claim.

The defendant requested a more explicit explanation of the McDonnell Douglas burden-shifting scheme. The DOC argues that, in addition to the charge given, the jury should have been instructed explicitly as to the shifting burdens and upon which party's shoulders they fell. Specifically, the DOC objects to the absence of language in the district court's instruction pertaining to the plaintiff's burden to

show that the reason for termination proffered by the DOC was pretextual.[5]

We need not recount the intricacies of the McDonnell Douglas test here.  The essence of McDonnell Douglas is a tripartite regimen.  The plaintiff must first prove the prima facie case for retaliatory discharge.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Thereafter, the defendant must rebut the presumption created by the prima facie case by producing a legitimate nondiscriminatory reason for the employer's action.  See McDonnell Douglas, 411 U.S. at 802.  Once the defendant meets this burden, "the trier of fact proceeds to the ultimate question: whether plaintiff has proved that the defendant intentionally discriminated against [the plaintiff]" on the basis of the plaintiff's protected characteristic or action.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993).  The plaintiff must "be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a cover-up for a . . . discriminatory decision."  McDonnell Douglas, 411 U.S. at 805.

The district court's jury instruction admittedly does not follow the exact regimen of McDonnell Douglas.  It need not do so,

_____

[5]     The plaintiff argues that the DOC did not properly object to this portion of the charge, and therefore, it was not properly preserved for our consideration.  Our reading of the transcript, however, reveals otherwise and we will consider the argument on the merits.

however, to be sufficient. See Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir. 1979) ("McDonnell Douglas was not written as a prospective jury charge; to read its technical aspects to a jury . . . will add little to a juror's understanding of the case."). What is important is that the instructions "identify the important factual issues," id., for the jury to resolve.

The chief complaint of the defendant here is that the jury was not told that it had to find pretext, and that the burden of showing pretext lay with the plaintiff. While we agree that this is an "important factual issue," we think that it was sufficiently presented to the jury. As we stated in Loeb: "The central issue, which the court must put directly to the jury, is whether or not plaintiff was discharged 'because of [protected conduct]'" Id. at 1017. Undoubtedly, the court put this issue to the jury. The court's instruction made clear to the jury that, in order to find for the plaintiff, it had to find "that the employer took the adverse employment action because she had filed a sexual harassment complaint." (emphasis added). This substantially incorporated into the charge exactly what the defendant wished.

We refuse to impose upon district courts a rigidly formalist view of McDonnell Douglas' requirements. As we stated in Loeb, "The Supreme Court has made it abundantly clear that McDonnell Douglas was intended to be neither 'rigid, mechanized, or ritualistic' nor the

exclusive method for proving a claim of discrimination." <u>Loeb</u>, 600 F.2d at 1017 (internal citation omitted). To adopt the defendants' view would be to impose just such a "rigid, mechanized, [and] ritualistic" requirement on the district courts.

**V.    <u>Conclusion</u>**

For the reasons set forth above, we **<u>affirm</u>** the district court. Costs awarded to appellee.