Dressler v. Daniel et al.              CV-00-489-B    09/28/01

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Diane Dressler</u>

v.                                    Civil No. 00-489-B
                                      **Opinion No. 2001DNH182**

Kevin J. Daniel and
Daniel's Pub, Inc.


<u>MEMORANDUM AND ORDER</u>


I have before me a number of pending motions, including Defendants' Supplemental Motion for Summary Judgment [document no. 42]. That motion presents a two-part argument that defendants are entitled to judgment on plaintiff's Title VII retaliation claim. First, defendants contend that Kevin Daniel's 1999 complaints to the police chiefs of the towns of Henniker and Newbury are the only specifically identified conduct alleged to have violated Title VII which arguably "occurred" within the three hundred days preceding plaintiff's filing of her retaliation charge with the Equal Employment Opportunity Commission ("EEOC"). See <u>Truax v. City of Portsmouth</u>, Civil No.

00-63-B, at 14-15 (D.N.H. June 18, 2001) (setting forth the exhaustion and timeliness principles applicable to Title VII claims filed in this district).[1] Second, defendants assert that there is insufficient evidence for a factfinder to conclude that Daniel made the complaints in retaliation for the conduct protected by Title VII that plaintiff has identified: plaintiff's early-1997 sexual harassment allegation against Daniel, which the parties promptly settled. I agree with this argument and grant defendants' motion.[2]

---

[1]Because plaintiff filed her administrative complaint on May 15, 2000, the limitations period extends back to July 20, 2000. The complaints to the police chiefs actually occurred in March 2000, but plaintiff alleges that she did not learn of them until August 3, 2000, and that her Title VII claim is therefore timely. I shall assume arguendo that plaintiff is correct on this point for purposes of ruling on defendants' motion.

[2]I wish to be clear on why I accept the premise of the argument just outlined: that the viability of plaintiff's Title VII claim turns on whether one or more specific acts made unlawful by Title VII occurred within the 300-day limitation period. First, plaintiff has not alleged that she was victimized by a "systemic violation" continuing into the limitation period. See Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 14 (1st Cir. 1998) (observing that, if such a violation is alleged, plaintiff need not also identify a specific act made unlawful by Title VII which occurred within the limitation period) (citation omitted). Second, to the extent that plaintiff may be claiming that complained-of conduct taking place within the limitation period was the tail end of a chain of retaliatory

In relevant part, Title VII's anti-retaliation provision provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or

---

acts which constitute a "serial violation" actionable under Title VII, see id. (making clear that an act within the limitation period forming a part of such a violation can render actionable past similar acts outside the limitation period), her claim fails.

   To maintain a serial violation claim, a plaintiff must establish that she reasonably was unaware that she was being discriminated against while the earlier acts were taking place, and that the timely act is linked to the untimely acts by, among other things, similarity in character. See id. at 14-15. Neither criterion is met here. Plaintiff not only fails to specify what it is about the 1999 police reports that finally caused her to realize she was being retaliated against for her 1997 protected conduct, but she also admits to knowing no later than 1998 that she was the subject of a smear campaign attributable to defendants, that the smear campaign was both the source of plaintiff's employment woes at Kearsarge Middle School and the reason she did not receive a job offer from Equity Real Estate, and that defendant Kevin Daniel was extremely angry about her earlier discrimination charge against him. See Plaintiff's Affidavit in support of the Fed. R. Civ. P. 56(f) Motion to Stay Disposition of Defendants' Motion for Summary Judgment ("Plaintiff's Affidavit") at ¶¶ 43-51, 64, 66, 68. As a result, she cannot credibly claim not to have known about the retaliation until fewer than 300 days prior to filing her claim. See Provencher, 145 F.3d at 15. Furthermore, the complaints to the police are simply too dissimilar in character from the alleged employment-related smear campaign to render the smear campaign actionable under Title VII, despite its having occurred outside the limitation period, as part of a serial violation extending into the limitation period. See id.; Lawton v. State Mut. Life Assur. Co. of America, 101 F.3d 218, 222 (1st Cir. 1996).

-3-

participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The First Circuit has inferred from this statutory language that a prima facie case of retaliation requires evidence that the plaintiff engaged in conduct protected by Title VII and, at the very least, see infra note 3, suffered adverse action causally connected to the protected activity, e.g., White v. New Hampshire Dep't of Corrections, 221 F.3d 254, 262 (1st Cir. 2000). As noted above, plaintiff has identified her stated intention to file a sexual harassment claim in early 1997 as the relevant "protected conduct," and I shall assume arguendo that the complaints to the police chief are sufficiently "adverse" to constitute actionable retaliation.[3] Even so, summary judgment is

---

[3]There is disagreement in the circuits as to whether retaliatory conduct must be employment-related to be actionable under Title VII. Compare, e.g., Aviles v. Cornell Forge Co., 183 F.3d 598, 605-06 (7th Cir. 1999) (holding that retaliatory conduct which does not impact on employment can be actionable under Title VII, at least for a current employee) with Nelson v. Upsala College, 51 F.3d 383, 387-89 (3d Cir. 1995) (holding that retaliatory conduct must related to an employment relationship). The First Circuit has repeatedly defined the concept of "adverse action" in employment-related terms by noting that such adverse action includes demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees. See, e.g., White, 221 F.3d at 262; Hernandez-Torres v.

warranted because no reasonable trier of fact could conclude, by a preponderance of the evidence, that the 1999 complaints to the police were caused by the 1997 harassment charge.

Plaintiff has not adduced evidence to substantiate the link plaintiff would have me draw, or even attempted a plausible explanation as to why defendant Daniel would go to the police on trumped-up charges approximately two years after promptly settling plaintiff's harassment claim against him.  In fact, plaintiff has only stated her unsubstantiated belief that the two events are causally related.  But "mere conjecture and unsupported allegations will not suffice."  DeNovellis v. Shalala, 135 F.3d 58, 65 (1st Cir. 1998) (applying Fed. R. Civ. P. 65 preliminary injunction standard and determining likelihood

_Intercontinental Trading, Inc._, 158 F.3d 43, 47 (1st Cir. 1998). Moreover, the Circuit has suggested, in analogous contexts, that the allegedly adverse action must have a material effect on the employment relationship. See _Blackie v. State of Maine_, 75 F.3d 716, 725-26 (1st Cir. 1996) (Fair Labor Standards Act retaliation claim); _Welsh v. Derwinski_, 14 F.3d 85, 86-87 (1st Cir. 1994) (Age Discrimination in Employment Act retaliation claim).  But my research suggests that the Circuit has never addressed the issue head-on in the context of clearly retaliatory but non-employment-related act.  Because there is a straightforward alternative basis for granting defendants' motion, I do not decide whether a retaliatory act must affect the plaintiff's employment in order to be actionable under Title VII.

of success of plaintiff's retaliation claim).

Moreover, although close temporal proximity between protected conduct and an adverse act may give rise to an inference of causal connection, e.g., Hodgens v. General Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998) ("protected conduct closely followed by adverse action may justify an inference of retaliatory motive") (citation and internal quotation marks omitted), the inference becomes ever more tenuous with the passage of time, e.g., Lewis v. Gillette Co., 22 F.3d 22, 25 (1st Cir. 1994) (granting summary judgment where more than two years elapsed between the protected conduct and the alleged retaliation); Mesnick v. General Elec. Corp., 950 F.2d 816, 828 (1st Cir. 1991) (nine-month period between protected conduct and alleged retaliation regarded as undermining inference of causation). In this case, the close temporal proximity necessary to support the inference is lacking.

Finally, the evidence as a whole, even when read in the light most favorable to plaintiff, undermines any suggestion that the March 1999 complaints were in retaliation for the long-settled 1997 discrimination charge. It is undisputed that there were a number interactions between plaintiff and Daniel following

-6-

the settlement of the discrimination charge, and the nature of at least some of those interactions suggests that events more recent than the discrimination charge were far more likely than the charge to have informed the state of the parties' relationship in March 1999. See Plaintiff's Affidavit at ¶ 34 (stating that, notwithstanding the settled harassment charge, plaintiff and defendant Daniel engaged in a sexual relationship from July 1997 through September 1998).

For these reasons, I grant defendants' supplemental motion for summary judgment [document no. 42], but only insofar as it seeks a merits judgment on plaintiff's Title VII claim, which is the only federal claim plaintiff continues to press. See Plaintiff's Assented-to Motion to Withdraw Count II of Plaintiff's Second Amended Complaint (withdrawing plaintiff's claims under 42 U.S.C. §§ 1981 and 1981a). In doing so, I acknowledge that plaintiff has a pending Fed. R. Civ. P. 56(f) Motion to Stay Disposition of Defendants' Motion for Summary Judgment [document no. 32], which I deny because there is no indication that the additional discovery sought therein will cure the fatal defect in plaintiff's Title VII claim. There being no independent basis for subject matter jurisdiction over

plaintiff's state law claims and no compelling basis for me to keep them in federal court, I decline to exercise supplemental jurisdiction over them. <u>See</u> 28 U.S.C. § 1376(c)(3). Plaintiff should understand that this ruling does not bar her from reasserting her state claims in state court. All other pending motions are denied as moot.

The Clerk is directed to close the case.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 28, 2001

cc:  Diane Dressler, pro se
     Debra Weiss Ford, Esq.