**Bobbi–Lyn REED, Plaintiff**

v.

**MBNA MARKETING SYSTEMS, INC., MBNA America Bank, N.A., and MBNA America Corporation, Defendants**

No. 2–CV–28–B–S.

United States District Court, D. Maine.

Nov. 18, 2002.

William C. Knowles, Esq., Timothy J. O'Brien, Esq., Robert C. Brooks, Esq., Scott W. Boak, Esq., Verrill & Dana, Portland, for Bobbi Lyn Reed, plaintiff.

James R. Erwin, Esq., Ella L. Brown, Esq., Pierce, Atwood, Portland, for MBNA Marketing Systems Inc, MBNA America Bank NA, MBNA America Corporation defendants.

## ORDER

SINGAL, District Judge.

Plaintiff has brought an action against her former employer asserting that she was sexually harassed by her supervisor in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 *et seq.* (2002). Presently before the Court is Defendants' Motion for Summary Judgment (Docket # 13). For the reasons discussed below, the Court GRANTS Defendants' Motion for Summary Judgment.

## I. STANDARD OF REVIEW

The Court grants a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed. R.Civ.P. 56(c). The Court views the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

Plaintiff Bobbi–Lyn Reed ("Reed") started working at MBNA Marketing Systems, Inc. ("MBNA") as a telemarketer in July 1999, under the supervision of William Appel ("Appel"). Although Appel was Reed's superior at all relevant times, he often had problems maintaining his supervisory role and behaving appropriately. As the undisputed record shows, Appel, in fact, made a number of inappropriate comments aimed at Reed throughout the duration of the time they spent working together. For example, shortly after Reed started working with Appel, Appel began making comments to suggest he was attracted to her. In addition to often complimenting Reed on what she was wearing, Appel once commented that if Reed ever caught him looking at her it was because she reminded him of his ex-girlfriend. On a more blatant level, Appel continuously dropped green M & M's on Reed's desk claiming they were supposed to "make [her] horny." (*See* Defs.' Statement of Material Facts at App. 2 (Docket # 14).).[1]

Despite the fact that these comments made Reed feel uncomfortable, Appel convinced Reed to babysit for him in late August 1999. According to Reed, after Appel returned home, Appel forced her to perform oral sex on him. Afterward, Reed says Appel told her not to tell anyone at work because both of them could get in a lot of trouble and his father was "good friends with the owner of MBNA." (*See* Pl.'s Opposing Statement of Material Facts at Vol. II ("Reed Dep.") (Docket # 18).).

For a few days after the incident at Appel's home, Appel stopped making his usual inappropriate comments. Within a short time, Appel again started dropping

---

1. According to Reed, Appel made the references to green M & M's almost everyday and would even go and buy some so that he could then drop the green ones on her desk. On one occasion, Appel grabbed a bag of M & M's near Reed's purse, picked out the green ones and put the other ones back in the bag.

green M & M's on Reed's desk and asking Reed to babysit for him. Reed eventually left MBNA on September 30, 1999, without telling anyone what had happened.

In May 2000, Reed re-applied to MBNA. Because Reed did not mention her prior problems with Appel, MBNA assigned her to the same telemarketing team on which she worked in 1999, Team Appel. For the first few weeks, Appel refrained from engaging in any inappropriate conduct. Thereafter, Appel again began his typical inappropriate behavior, including dropping green M & M's on Reed's desk, commenting on her appearance, and asking her why she no longer dressed up. In August 2000, Appel called Reed into his office, asked if she would babysit for him again and told her she looked like she needed to "wrestle"[2] or eat more green M & M's. (See Defs.' Statement of Material Facts at App. 3 (Docket # 14).). Reed refused. Reed asserts that in response Appel became "really mean," yelling at her for things that were once acceptable to him, such as coming in to work late and wearing khakis. (See Pl.'s Opposing Statement of Material Facts at Vo. II ("Reed Dep.") (Docket # 18).).

On August 28, 2000, Reed told MBNA about her problems with Appel and requested a transfer. That same day, MBNA began an investigation of Appel and suspended him the following day. During the course of the investigation, MBNA discovered that Appel had engaged in sexual relations with, not only Reed, but with another under-aged employee. As a result of its investigation, MBNA decided to dismiss Appel. Appel, however, re-signed before the necessary approvals for his dismissal could be obtained.

On February 22, 2001, Reed filed a charge with the Maine Human Rights Commission ("MHRC") seeking to hold MBNA responsible for Appel's actions. The MHRC declined to do so, finding that there were no reasonable grounds on which to believe discrimination occurred.

In December 1999, Reed filed a seven count complaint in Maine Superior Court against MBNA, MBNA America Bank, N.A., and MBNA Corporation (erroneously sued as MBNA America Corporation) (collectively "Defendants"). The complaint alleged the following: unlawful discrimination in violation of the Maine Human Rights Act (Count I); unlawful discrimination in violation of Title VII (Count II); negligent supervision (Count III); negligent retention (Count IV); negligent training (Count V); punitive damages (Count VI); and unlawful withholding of wages (Count VII). Defendants subsequently removed the action to federal district court. In a previous order, the Court granted Defendants' motion to dismiss Counts III, IV and V. Presently before the Court is Defendants' motion for summary judgment as to Counts I, II and VII. The Court first discusses Plaintiff's Title VII sexual harassment count then moves on to consider Plaintiff's MHRA and unpaid wages counts.

## III. DISCUSSION

### A. Title VII

■ Title VII makes it unlawful "for an employer . . . to discriminate against any

---

**2.** The undisputed facts show that immediately before Reed performed oral sex on Appel, Appel and Reed talked about wrestling because she had been the manager of her high school wrestling team. Following the conversation, Appel wrestled Reed into a headlocked position and took her into the living room where she performed oral sex. In light of these facts, the Court assumes Appel's reference to wrestling was intended to suggest Reed engage in another sexual activity and not to suggest she participate in the actual sport of wrestling.

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is a form of gender discrimination actionable under Title VII. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Provencher v. CVS Pharmacy, Div. of Melville Corp.,* 145 F.3d 5, 13 (1st Cir.1998).

■ Workplace sexual harassment may take either of two forms: 1) "quid pro quo" harassment, which consists of promises of favorable treatment or threats of unfavorable treatment calculated to coerce an employee into submitting to unwelcome sexual advances; or 2) "hostile work environment" harassment, which consists of offensive gender-based conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment" and is subjectively perceived by the victim to be abusive. *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 463 (1st Cir.1996) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Here, the parties do not dispute that this action is a "hostile work environment" case.

■ In order to set forth a prima facie case of hostile work environment sexual harassment, Plaintiff must show that: 1) she is a member of a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based upon sex; 4) the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; 5) the sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and the victim, in fact, did perceive it to be so; and 6) some basis for employer liability has been established. *O'Rourke v. City of Providence,* 235 F.3d

713, 728 (1st Cir.2001) (citing *Meritor,* 477 U.S. at 65–73, 106 S.Ct. 2399). Defendants assert that Plaintiff fails to present sufficient evidence to show that Appel's conduct was sex-based harassment, that Appel's conduct was sufficiently severe and pervasive, and that Defendants are vicariously liable.

■ Before addressing the specifics of each claim, however, the Court notes that Defendants predicate their argument on the supposition that Title VII's administrative filing requirements preclude the Court from considering allegations of harassment that occurred before April 30, 2000. Pursuant to Title VII's administrative filing requirements, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") "within one hundred and eighty days after the alleged unlawful employment practice occurred" before filing a Title VII action in the federal district court. 42 U.S.C. § 2000e–5(e) (1995). In "deferral states" such as Maine, where the state has its own anti-discrimination laws and agency, that period is extended to 300 days. *Id.; Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 16 (1st Cir.2002). The "continuing violation" doctrine creates an equitable exception to the 300–day limitation when the unlawful behavior is deemed ongoing. *Provencher,* 145 F.3d at 14.

Defendants argue Plaintiff's departure from MBNA for eight months destroys any "continuing violation" circumvention of Title VII's administrative filing deadline and that the timely and untimely acts cannot fairly be said to be related to each other. In addition, Defendants claim Plaintiff, who concedes she believed she was being sexually harassed before she left MBNA in 1999, should have filed an administrative complaint within 300 days of her departure on September 30, 1999.

The Supreme Court's recent decision in *Nat'l R.R. Passenger Corp. v. Morgan*, —— U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), severely undermines Defendants' argument. In *Morgan*, the Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* at 2068. The Court explained that a "hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 2074 (citation omitted). Therefore, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.; see also Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395–96 (1st Cir. 2002).

Plaintiff alleges a number of incidents within the filing period for purposes of anchoring her claim to the entirety of the hostile work environment created by Appel. These incidents include: 1) Appel's continuous references to green M & M's; 2) Appel's ongoing comments regarding Plaintiff's physical appearance; 3) Appel's multiple requests that Plaintiff babysit again; and 5) Appel's comments that Plaintiff looked stressed and needed to wrestle. In light of the incident at Appel's home in August 1999, each of these incidents takes on a sexually charged meaning, thereby contributing to the overall hostile work environment. Accordingly, the above incidents sufficiently anchor the incidents that occurred outside the timely filing period, and the Court reviews the entire hostile environment allegedly created by Appel from 1999 through 2000.

### 1. Sex–Based Harassment

 Title VII does not prohibit all verbal or physical harassment in the workplace. Rather, it is only directed at "discrimination ... because of ... sex." 42 U.S.C. § 2000e–2(a)(1). Workplace harassment, even harassment between men and women, is not automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). To establish that the harassing conduct is based on sex, the plaintiff must show that "but for the fact of her sex, she would not have been the object of harassment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir.1999) (citation omitted).

 Harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. *Oncale*, 523 U.S. at 80, 118 S.Ct. 998. Nonetheless, in male-female sexual harassment situations the inference of discrimination is often easily drawn because the challenged conduct generally involves either explicit or implicit proposals of sexual activity. *Id.* In such situations, it is reasonable to assume that the same proposals or comments would not be made to someone of the same sex. *Id.; see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 n. 3 (3d Cir.1990) ("The intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course.").

Defendants argue Plaintiff fails to meet this element of the prima facie case because: 1) Appel's conduct cannot fairly be

said to be based on Plaintiff's sex, especially given that Plaintiff alleges she was treated differently compared to other *women*, instead of men; 2) Appel's conduct did not subject Plaintiff to disadvantageous terms of employment; and 3) Appel's comments amounted to nothing more than mere compliments and trivial jokes, part of ordinary socializing.

In light of the totality of the circumstances, however, the undisputed facts clearly show that Apple's conduct was, in fact, based on sex. At the very least, Appel's comments to Plaintiff amounted to implicit proposals of sexual activity motivated by his attraction to her. It is, therefore, reasonable to assume Appel would not have made any of the comments he made to Plaintiff had she been a male. Therefore, Plaintiff meets her prima facie burden to show sex-based harassment.

### 2. Severe or Pervasive Harassment

■ A claim of hostile work environment sexual harassment also requires a showing that the harassment is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotations omitted). In order to determine whether the alleged sexual harassment is sufficiently severe or pervasive, the court must consider the totality of the circumstances. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

■ The factors courts consider in determining whether a hostile work environment exists are: 1) the frequency of the discriminatory conduct; 2) its severity; 3) whether it is physically threatening or humiliating, or a mere offensive utterance; and 4) whether it unreasonably interferes with an employee's work performance. *Brown v. Hot, Sexy & Safer Prods., Inc.,*

68 F.3d 525, 540 (1st Cir.1995) (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367); *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (stating that the conduct must be extreme to amount to a change in the terms and conditions of employment so as not to turn Title VII into a "general civility code"). Moreover, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787, 118 S.Ct. 2275; *see also Oncale,* 523 U.S. at 81, 118 S.Ct. 998 (stating that the "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'") (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367).

■ Here, Plaintiff was not only subjected to an unwelcome sexual advance outside of work, but also harassment at work on a near daily basis. *See Crowley v. L.L. Bean,* 303 F.3d 387, 409 (1st Cir.2002) (permitting evidence of non-workplace conduct to help determine the severity and pervasiveness of the hostility in the workplace). In fact, following the incident at Appel's home, Appel's conduct at work became even more aggressive and inappropriate. In addition to making his typical inappropriate comments, Appel began continuously asking Plaintiff to babysit for him again. On one occasion, Appel called Plaintiff into his office to tell her she needed to wrestle because she seemed "uptight". (*See* Pl.'s Opposing Statement of Material Facts at Vo. II ("Reed Dep.") (Docket # 18).). The next day, Appel took Plaintiff into the cafeteria to tell her she was "acting strange" (*See* Pl.'s Opposing Statement of Material Facts at Vo. I ("Tenggren Dep.") (Docket # 18).). Furthermore, once Plaintiff began ignoring

Appel, he started criticizing her for things that were acceptable to him in the past. Looking at the facts from the perspective of a reasonable person in Plaintiff's position, the Court finds that Appel's conduct was sufficiently severe and pervasive to constitute an actionable hostile working environment. *See e.g., White v. New Hampshire Dep't of Corr.,* 221 F.3d 254, 269–62 (1st Cir.2000) (finding ongoing pattern of sex-based rumors about plaintiff, discriminatory language, and sexual jokes and conversations between male employees sufficient to support a claim for hostile work environment); *Hernandez–Loring v. Universidad Metropolitana,* 233 F.3d 49, 55–56 (1st Cir.2000) (evidence of two specific instances of sexual harassment in the context of an ongoing pattern of conduct sufficient to survive summary judgment in hostile work environment claim).

### 3. Employer Liability

█ In spite of the above discussion, Plaintiff fails to establish the employer liability element of the prima facie case. An employer is subject to vicarious liability for a victimized employee's actionable hostile environment claim if the claim arises from the actions of a supervisor with immediate (or successively higher) authority over the employee. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

█ A defendant employer may, however, avoid vicarious liability for the misconduct of a supervisor in a Title VII hostile environment case by establishing that it is entitled to the affirmative defense set forth in the Supreme Court's holdings in *Ellerth* and *Faragher.* The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. The employer bears the burden of proof as to both. *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 20 (1st Cir.2002).

█ If a supervisor takes a tangible job action against the subordinate employee based on the subordinate's response to unwelcome sexual demands, however, the employer cannot raise the affirmative defense. *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. The result is the same whether the employee rejects the demands and is subjected to an adverse tangible employment action or submits to the demands and consequently obtains a tangible job benefit. *Jin v. Metro. Life Ins. Co.,* 295 F.3d 335, 345 (2nd Cir.2002) (internal citations omitted).

Here, in an effort to block the availability of the affirmative defense, Plaintiff argues she suffered a tangible employment action because Appel forced her to submit to his sexual advances in order to keep her job. Even construing the facts in the light most favorable to Plaintiff, however, the record does not support this characterization of the facts. Contrary to what Plaintiff now argues, the facts do not show that Appel ever made or threatened to make decisions affecting Plaintiff's employment based on her submission to his sexual advances.

█ Next, Plaintiff argues there is at least a fact question as to whether the comments Appel made after the sexual incident at his home (i.e., that what had happened needed to stay between them and that his father was "good friends with the owner of MBNA." (*See* Pl.'s Opposing Statement of Material Facts at Vol. II ("Reed Dep.") (Docket # 18).)) constitute a tangible employment action because she was forced to keep the incident to herself in order to keep her job. Plaintiff, howev-

er, does not present any evidence that she received such benefit, as the retention of her employment, in exchange for refraining from reporting the unwelcome conduct. *See Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 267–68 (4th Cir.2001) (finding no tangible employment action because plaintiff failed to show she received her pay increase, promotion and good evaluations in exchange for refraining from reporting supervisor's unwelcome conduct). Without a sufficient causal link between the alleged benefit and the alleged quid pro quo demand, Plaintiff fails to show that Appel's comments constituted a tangible employment action. *See id.; see also Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 775–76 (6th Cir.1996) (statement from harasser that he was "close friends" with individual who had impact on claimed adverse employment decision held to be too attenuated to establish causation; *Matvia,* 259 F.3d at 267 (stating that while a plaintiff is entitled to all reasonable inferences, neither *Faragher* nor *Ellerth* intended any mundane, non-adverse action to be a sufficient tangible employment action, thereby unreasonably depriving employers an affirmative defense).[3]

Defendants, therefore, are entitled to raise the *Faragher* affirmative defense.

### a. Employer's Reasonableness

■ The first prong of the defense is that the employer exercise reasonable care to prevent and correct promptly any sexually harassing behavior. *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. Depending on the employment context, proof that an employer has promulgated an anti-harass-

ment policy with a complaint procedure may be sufficient for the employer to show that it has taken reasonable care to prevent harassment. *Marrero,* 304 F.3d at 21 (stating that "the availability of the affirmative defense often will turn on whether the employer ... established and disseminated an anti-discrimination policy, complete with a known complaint procedure").

■ It is undisputed that Defendants had a policy against sexual harassment and a procedure that called for employees to present complaints to either their manager or directly to personnel. In addition, it is undisputed that MBNA provided training to explain its sexual harassment policy to all its employees. Plaintiff does not attack the soundness of the policy in place. Plaintiff also does not deny that she received the customary training.

Plaintiff does, however, argue that MBNA failed to take reasonable steps to prevent or correct harassment because it did not take any significant disciplinary action, despite numerous past allegations of Appel's inappropriate behavior. With MBNA's "total acceptance" of Appel's conduct, Plaintiff argues "it is hard to imagine any set of circumstances that would have resulted in disciplinary action against Appel, other than having Appel admit to harassment." (*See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 19–20 (Docket # 17).).

Notwithstanding Plaintiff's argument, the law only requires an employer's efforts to prevent and remedy harassment be reasonable, not clairvoyant. *Parkins v. Civil*

---

**3.** The cases Plaintiff cites in support of her argument are distinguishable from the present case because Appel's conduct was not severe enough to impose a new condition on Plaintiff's employment, thereby significantly changing the terms and conditions of her employment. *See Jin v. Metro. Life Ins. Co.,* 295 F.3d 335, 345 (2nd Cir.2002) (stating

plaintiff suffered a tangible employment action because supervisor explicitly imposed an added job requirement on the plaintiff by requiring her to submit to weekly sexual abuse to retain her employment); *Showalter v. Allison Reed Group, Inc.,* 767 F.Supp. 1205, 1212 (D.R.I.1991) (same).

*Constructors of Ill., Inc.*, 163 F.3d 1027, 1036 (7th Cir.1998) (stating that "the law does not even require that the employer's actions prevent harassment, but merely that its response [be] reasonably likely to prevent future harassment."). Indeed, even where there have been prior complaints of sexual harassment against a supervisor, and the employer's actions did not succeed in preventing later harassment by the same supervisor, summary judgment has been granted where courts have found the employer's efforts in response to the prior complaints reasonable. *Scrivner v. Socorro Indep. School Dist.*, 169 F.3d 969, 970–71 (5th Cir.1999) (finding employer's response to prior complaints reasonable and vigorous where employer questioned all employees and warned supervisor to curtail certain conduct, even if response did not prevent future harassment of plaintiff).

Here, it is undisputed that various complaints were filed against Appel in 1996 and late 1999. Both times, however, MBNA took steps to address the concerns raised. In 1996, in response to complaints of inappropriate behavior, MBNA's Regional Employment Manager and MBNA's Regional Personnel Director promptly met with Appel and educated him on the need for appropriate behavior.

In early 2000, in response to complaints of sexually inappropriate comments in late 1999,[4] MBNA commenced an investigation that involved interviewing each representative on Appel's team.[5] Then, even though the investigation did not reveal any inappropriate behavior by Appel, MBNA once again educated Appel on the importance of remaining in his management role at all times.

Finally, MBNA responded in an equally prompt and reasonable manner to Plaintiff's complaint in August 2000. Immediately upon receiving Plaintiff's complaint, MBNA commenced an investigation into Appel's conduct on August 28, 2000. As a result of what MBNA learned during its investigation, MBNA suspended Appel on August 29, 2000, and then decided to dismiss him shortly thereafter. Plaintiff, in fact, does not dispute the adequacy of MBNA's response to her complaint.

Based on the above undisputed fact, the Court finds MBNA exercised reasonable care to prevent sexual harassment as a matter of law. There being no genuine issue of material fact regarding this issue, Defendants satisfy the first prong of the affirmative defense.[6]

b. Employee's Unreasonableness

The second prong of the defense is that the employee must have unreasonably failed to avail herself of any corrective or preventive opportunities provided by

4. These complaints, which were lodged by Karen Paquin, a representative on Appel's team, were not complaints of sexual harassment.

5. As part of the investigation, each representative was specifically asked, "How are things on team Appel? Do you have any issues or concerns with your team or your manager? Have you heard of any issues or concerns? If you could change one thing, what would it be?" (*See* Defs.' Statement of Material Facts at App. 1 (Docket # 14).).

6. The cases Plaintiff cites in support of her argument are distinguishable from the present case in light of Defendants' proper and prompt response in each of the instances elaborated above. *See White v. New Hampshire Dep't of Corr.*, 221 F.3d 254, 261 (1st Cir.2000) (finding employer failed to prove that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior); *see also Crowley v. L.L. Bean, Inc.*, 143 F.Supp.2d 38, 54 (D.Me.2001) (denying summary judgment where employer failed to take any meaningful steps to remedy allegedly harassing conduct for two years after gaining knowledge of the harassment).

the employer. *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Here, Plaintiff did not inform anyone of Appel's harassing conduct until a year after she was harassed. Plaintiff claims her delay was reasonable because: 1) she was only seventeen when the incident at Appel's home took place; 2) she was embarrassed by the situation; 3) Appel was her direct supervisor and told her not to tell anyone or she would be dismissed; 4) she was intimidated by Appel's close relationship with MBNA management and his claim that his father was close friends with the "owner" of MBNA; and 5) she was afraid of Appel's reaction because he had responded angrily in the past to those who did not do what he said.

 The reasons listed above, however, are not enough to excuse Plaintiff from following the procedures adopted for her protection. Given MBNA's practice of handling complaints confidentially, the fact that Plaintiff was too embarrassed or ashamed to tell anyone does not constitute a valid reason for avoiding the company's channels for dealing with sexual harassment. *See Landrau Romero v. Caribbean Rests., Inc.,* 14 F.Supp.2d 185, 192 (D.P.R. 1998). Furthermore, even if Plaintiff feared retaliation or further humiliation, no evidence suggests that Defendants' procedures were inadequate. In fact, in addition to directly addressing sexual harassment, Defendants' policy did not require that complaints be filed with an immediate supervisor, or for that matter, even management. Therefore, Plaintiff's excuse that she was intimidated by Appel and his close relationship to MBNA management is not reasonable. *See id.*

Though a plaintiff can rebut a defendant's affirmative defense and create an issue of fact with evidence that she behaved reasonably under the circumstances, Plaintiff has produced no such evidence in this case. Defendants, therefore, cannot be liable for the sexual harassment caused by one of its employees as a matter of law.

**B. Maine Human Rights Act ("MHRA")**

 The MHRA provides that it is unlawful employment discrimination for an employer to discriminate against an employee on the basis of sex "with respect to hire, tenure, promotion, transfer, employment." 5 M.R.S.A. § 4572(1)(A) (2002). The statute of limitations for a claim pursuant to the MHRA is two years following the event of discrimination. 5 M.R.S.A. § 4613(2)(c) (2002). Accordingly, Defendants argue Plaintiff's claims of sexual harassment that took place before November 8, 1999, are time-barred. Defendants argue *Nat'l R.R. Passenger Corp. v. Morgan,* —— U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), is of no avail to Plaintiff's MHRA claim because it is neither binding nor persuasive authority for construing Maine's statute of limitations.

Notwithstanding Defendants' argument, the Maine courts have relied on federal case law surrounding Title VII for the purpose of construing and applying the provisions of the MHRA. *Bowen v. Dep't of Human Servs.,* 606 A.2d 1051, 1053 (Me. 1992). Accordingly, the Court finds that *Morgan*'s reasoning, regarding the anchoring of various incidents relevant to a hostile work environment claim, applies equally to claims brought under the MHRA and Title VII. As such, the Court finds Plaintiff's entire hostile work environment claim is timely filed under the MHRA. Nonetheless, in light of the above discussion on Title VII, the Court finds Plaintiff similarly fails to establish a prima facie case of hostile work environment sexual harassment under the MHRA. *See id.*

**C. Unpaid Wages**

Under Count VII, Plaintiff brings a claim for violation of the Maine law on

payment of wages stating that MBNA failed to pay her for all hours worked. It is not clear whether she seeks to recover under 26 M.R.S.A. § 626 (1990), which provides a remedy for unpaid wages or 26 M.R.S.A. § 670 (1990) for unpaid minimum wages. In any event, the Court grants summary judgment on this count because Plaintiff failed to brief the issue in response to Defendants' motion for summary judgment.

## IV. CONCLUSION

For the above stated reasons, the Court hereby GRANTS Defendants' Motion for Summary Judgment on Counts I, II and VII (Docket # 13). Likewise, Plaintiff's only remaining count, Count VI for punitive damages, is also dismissed as it pertains only to damages and cannot stand alone.

SO ORDERED.